# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

KELSEY N.,[1]

        **Plaintiff,**

    v.

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

        **Defendant.**

**Case No. 3:24-cv-7679**
**Magistrate Judge Cheryl L. Pollak**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kelsey N. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the Commissioner of Social Security, is substituted as Defendant in his official capacity.

## I.      PROCEDURAL HISTORY

On February 9, 2022, Plaintiff filed applications for disability insurance benefits and supplemental security income on February 9, 2022, and February 16, 2022, respectively, alleging that she had been disabled since an alleged onset date of September 5, 2017. R. 24, 81–82, 119– 20, 204–20. Plaintiff's applications were denied initially and upon reconsideration.  R. 124–33, 141–54. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 156– 58. ALJ Dory Sutker held a telephonic hearing on June 14, 2023,[3] at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 42–80. In a decision dated July 26, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 1, 2020,[4] the alleged onset date, through the date of that decision. R. 24–36. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 2, 2024. R. 11–16. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 10, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[5] On April 20, 2026, the case was reassigned to the undersigned. ECF No. 18. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

---

[3] The ALJ explained the need for a telephonic hearing due to the "extraordinary circumstance presented by the Coronavirus Disease 2019." R. 24.

[4] Plaintiff amended the date of onset to February 1, 2020 after the hearing. R. 24 (citing Ex. 9D, R. 233).

[5] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g., Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§

404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 28 years old on her alleged disability onset date. R. 34. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 1, 2020, her alleged onset date, and the date of the decision. R. 26.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: depressive disorder, bipolar disorder, anxiety disorder, post traumatic stress disorder, migraine headaches, and degenerative disc disease. R. 27.  The ALJ also found that Plaintiff had the following alleged impairments that were not medically determinable or severe: tremor, asthma and Lyme disease. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

7

impairments that met or medically equaled the severity of any Listing. R. 27–29.

At step four, the ALJ found that Plaintiff had the RFC to perform light work, subject to various exertional and non-exertional limitations. R. 29–34. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an ophthalmic technician. R. 34.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 117,000 jobs as a package sorter; approximately 11,000 jobs as a mail room clerk; approximately and 8,000 jobs as an electrical assembler–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 34–35. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 9, 2022, her alleged onset date, through the date of the decision. R. 35.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief* (*Pl.'s Br.*)*,* ECF No. 11; *Plaintiff's Reply Brief* (*Pl.'s Reply*), ECF No. 17. Plaintiff raises two arguments in challenging the decision of the ALJ:  1) that the ALJ's decision is not supported by substantial evidence where the ALJ found the opinions of the State Agency psychological consultants to have little persuasive value; and 2) that the ALJ's RFC assessment is not supported by substantial evidence where the ALJ failed to account for plaintiff's limitations due to migraines. *Pl.'s Br.* at 9, 17.

The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief* (*D.'s Br.*), ECF No. 16.

IV.    **SUMMARY OF RELEVANT PSYCHOLOGICAL EVIDENCE**

A.    **State Agency Reviewing Psychological Consultants**

Jocelyn Fierstien[6] conducted an initial review of Plaintiff's medical record on behalf of the state agency on June 6, 2022. R. 83–100. Consultant Fierstien found that Plaintiff had the following severe impairments: depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorders; and trauma- and stressor-related disorders. R. 86, 95. When considering the paragraph B criteria under Listings 12.04 and 12.06, Consultant Fierstien found that Plaintiff was mildly limited in her abilities to understand, remember, or apply information; interact with others; and adapt or manage herself, but was moderately limited in her ability to concentrate, persist, or maintain pace. *Id*.

Under the heading, "MRFC Additional Explanation[,]" Consultant Fierstien explained her findings as follows:

> DIB/DI concurrent claims.
> Cl. has a hx of Bipolar Disorder, GAD, as well as PTSD. Cl. had been seen through NJ Psychotherapy and Counseling Center, noted 8/21 to present with mood swings, trouble with sleeping, lashing out. MSE: cl. presented as anxious, denied SI/HI, as oriented, with good insight. Cl. presents with unremarkable MSE, 2/22. has been prescribed medications including Wellbutrin, propranolol, lamotrigine, among other medications. Other MER indicates cl. Has received psych and neuro exams, negative in records from Mid Jersey Orthopedics. Function report indicates some difficulty with concentration, communicating in loud environments and offices, as well as trouble communicating with parents or employers. Cl. is noted to get easily fatigued, cl. has been prescribed Wellbutrin and Topamax. Cl. is able to maintain household chores, read and study topics of personal interest, care for pets, cl. needs help and encouragement for tasks, prepares food. Based on available psych information, cl. is able to perform basic tasks, sustain CPP, relate and adapt to low stress or low contact work-like settings.

R. 89, 98.

---

[6] Other than a reference to a psychology specialty, R. 87, 89, 96, 98, Consultant Fierstien's credentials do not appear in the record.

Julie Bruno, Psy.D. reviewed Plaintiff's record upon reconsideration for the state agency on August 30, 2022. R. 101–18. Dr. Bruno agreed that Plaintiff suffered from the severe impairments of depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorders; and trauma- and stressor-related disorders. R. 104, 113. However, when considering the paragraph B criteria under Listings 12.04 and 12.06, Dr. Bruno found that Plaintiff was moderately limited in all four broad functional areas, *i.e.*, understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. *Id*.

Under the heading, "MRFC Additional Explanation[,]" Dr. Bruno found that Plaintiff "can follow simple instructions and directions. Clmt can engage in two step tasks. Clmt is capable of SRTs [simple repetitive tasks]." R. 107, 116.

## B.      ALJ's Review

In evaluating Plaintiff's claims for benefit, the ALJ noted that Plaintiff stated that she is unable to manage the demands of work-related activities on a regular and full-time basis. R. 29. She lived in her parents' home, had a work history as a technician, but stopped because she had difficulty being on her feet for long periods of time, had trouble with flashing lights, shooting pain and seizures.  R. 29–30.  She also claimed to suffer from "extreme fatigue" which required her to lie down for an hour or two. R. 30. She also described "full body tremor," a history of asthma, and neurological issues related to Lyme disease.  *Id.*  She also claimed she uses a cane when working out, on longer walks, and at the store. *Id.*

The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," she found that the Plaintiff's statements concerning "the intensity, persistence, and limiting effects" were not entirely consistent with the

medical evidence, and not supported by "the objective examinations and assessments of her functioning." *Id.* In support of this finding, the ALJ noted that the record reflected that Plaintiff reported exercising daily, including in the gym "almost daily" even when complaining of dizziness and headaches, having a moderate activity level, and having an occupation as an artist. *Id.* (citing Ex. 14F p. 129; Ex. 1F pp.1, 8, Ex. 4F p. 14). The ALJ also noted that she was assessed as having "common migraine with intractable migraine," difficulty with tandem gait, but able to stand with her feet together, eyes closed. *Id.* (citing Ex. 4F p.15).[7]

In evaluating Plaintiff's history of behavioral health conditions, the ALJ cited the treatment Plaintiff received through NJP Counseling Center. R. 32. Although Plaintiff claimed an onset of disability of February 2020, the ALJ observed that she had not sought treatment until 2021, when in August 2021, she had a comprehensive mental health examination and was diagnosed with bipolar disorder and PTSD. *Id.* She reported mood swings, poor sleep, and lashing out at others; she also indicated an improvement in her social life, with interests in writing, modeling and art. R. 32-33. An initial psychiatric assessment in December 2021 documented her complaint of PTSD, noting that she presented as "anxious but mental status examination was otherwise within normal limits." R. 33 The ALJ notes that she was "assigned diagnoses of generalized anxiety disorder, bipolar II disorder and PTSD" and that treatment notes document "euthymic mood and otherwise intact mental status examination." *Id.* 33 (citing Ex. 6F pp 48-49).

---

[7] Although the ALJ reviewed Plaintiff's record of treatment for her various physical claims, because Plaintiff's challenge focuses mainly on the alleged failure to evaluate the supportability and consistency of the state agency psychological consultants and on the evidence of limitations stemming from migraines, the Court has focused its review on those areas, noting only that the ALJ performed a thorough review of Plaintiff's records relating to her other physical complaints.

The ALJ noted that "due to treatment," in February 2022, Plaintiff had demonstrated "moderate improvement," but in March, she was described as "delusional," calling the police about social media and believing that her high school coach was stalking her on social media. *Id.* (citing Ex. 10F, pp. 1, 11). Later that same month, she presented with "severe paranoia" and was not able to "address that her symptoms were delusional." *Id.* She was referred to an intensive outpatient program (IOP), and noted to have signs of borderline personality disorder, expressing paranoid and intrusive thoughts. *Id.* (citing Ex. 10F, p. 17, 6F p. 28).

Plaintiff was discharged from treatment "between April and August 2022," and when erroneously given an appointment in August, presented "with elevated mood and occasional yelling," claiming that she was being stalked. *Id.* She then began treatment with a different provider where she demonstrated tangential speech but her mental status assessment was "otherwise within normal limits" and she noted "improved mood with medication." *Id.* (citing Ex. 10F, pp. 23-25). The ALJ noted that she "did not engage in any intensive outpatient program nor was she referred for any greater level of treatment, such as more frequent appointments or inpatient treatment." *Id.* The ALJ further remarked that mental status exams from her treatment for physical conditions "do not suggest that she presented with any meaningful abnormalities," noting that "she presented with intact mental status examination without abnormalities." *Id.* (citing Ex. 3F, p. 12; 8F, pp. 5-11). The ALJ commented that although Plaintiff testified at the hearing that her symptoms were related to her seizure disorder and were not psychiatric issues, "[t]he record does not contain any provider statement" indicating that her "presumed-psychiatric issues" were a product of her seizure disorder. *Id.*

12

The ALJ further noted that the record did not contain any opinion statement from a treating provider and she found that the prior administrative medical findings – while "fully considered" – "have little persuasive value". *Id.*

## IV.    DISCUSSION

Plaintiff contends that a State Agency's psychological reviewing consultant, Dr. Julie Bruno, assessed "moderate" limitations in all Paragraph B criteria, opining that Plaintiff could follow simple instructions and directions and can engage in two step tasks." *Pl.'s Br.* at 10 (citing R. 106-07).  According to Plaintiff, Dr. Bruno's was the "only medical opinion" in the record relating to Plaintiff's functional limitations resulting from her mental impairments and that the ALJ, in rejecting Dr. Bruno's opinion and assessments, failed to discuss how the supportability or consistency of Dr. Bruno's medical opinion was considered or provide a reason for rejecting it. *Id.* p. 11.

For claims filed after March 27, 2017,[8] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical

---

[8] As previously noted, Plaintiff's claims were filed on February 9 and 16, 2022.

source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other

factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

In the present case, the ALJ determined that Plaintiff had the RFC to perform light work subject to various additional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant would need an environment with no more than a moderate noise level. She never be exposed to unprotected heights and dangerous moving machinery. She can never drive on the job. She [sic] never work around sharps or open flames. *The claimant can understand, remember, and carry out simple instructions and perform simple tasks*. She can maintain concentration, persistence, and pace for two hour blocks of time throughout the workday. She can have brief and routine contact with the public and interact with coworkers and supervisors on routine matters. She can adapt to routine changes.

R. 29 (emphasis added). In reaching this determination, the ALJ found, *inter alia*, that the state agency reviewing psychological consultants' opinions had "little persuasive value[,]" explaining as follows:

> The record does not contain any opinion statement from a treating provider. The prior administrative medical findings were fully considered but have little persuasive value as these found moderate limitations in all of the paragraph B criteria, but did not assign related limitations in the assessment. These findings at the initial determination limited the claimant to basic tasks in low stress or low contact work-like settings. At the reconsideration determination the claimant was found able to follow simple instructions and directions, two step tasks, and simple repetitive tasks (Exhibit 6A). The residual function capacity contains additional work-related restrictions, such as brief and routine contact with the public and

15

> interaction with co-workers and supervisors on routine matters, based upon a plain reading of the medical evidence of record and full consideration of the claimant's testimony regarding her interaction with others.  The record does not support a need for additional work-related restrictions.

R. 33.

Citing case law that found remand appropriate where the ALJ failed to properly address both supportability and consistency, *Pl.'s Br.,* p. 12 (citing cases), Plaintiff challenges the ALJ's evaluation of the opinion of Dr. Bruno, the state agency reviewing consultant on reconsideration, arguing that the ALJ failed to discuss the objective medical evidence and supporting explanations provided by Dr. Bruno in support of her recommended moderate mental health restrictions. *Pl.'s Br.* at 12.  Plaintiff also argues that the ALJ failed to analyze the consistency between Dr. Bruno's opinion and the other medical and nonmedical sources in the record. *Id.*

Plaintiff further argues that the ALJ conflated the opinion of Dr. Fierstien, the state agency's psychological consultant at the initial level, with that of Dr. Bruno. *Id.* at 13.  In support of this argument, Plaintiff points to the ALJ's statement that "'prior administrative medical findings were fully considered but have little persuasive value *as these found moderate limitations in all of the paragraph B criteria, but did not assign related limitations in the assessment.*'" *Id.* (quoting R. 33) (emphasis added).  Plaintiff contends that Dr. Bruno did in fact provide specific functional limitations such as the limitation to two step tasks, whereas Dr. Fierstien did not assign corresponding limitations or functional restrictions. *Id.* (citing R. 88-89, 107).  Since the ALJ provided no reasons for rejecting Dr. Bruno's opinion, Plaintiff argues that the record is insufficient to permit meaningful review. *Id.* at 14. Citing *Haydee P. v. Kijakazi*, 2023 WL 8232671, at *6-7 (D.N.J. Nov. 28, 2023), Plaintiff argues that the ALJ's failure to thoroughly evaluate the state agency's psychological consultants' opinions requires remand.

Moreover, Plaintiff argues that even if there is support in the evidence for the ALJ's conclusion, the failure to evaluate the supportability and consistency of the state agency opinion still requires remand because without an adequate explanation, the Court cannot conduct a meaningful review nor determine what role lay speculation played in the ALJ's rejection of Dr. Bruno's functional assessment. *Id.* at 15. Plaintiff contends that this is not harmless error in that Dr. Bruno's assessment limited Plaintiff to two-step tasks, which is more consistent with a GED Reasoning Level of 1, *id.* (citing *Surprise,* 986 F.3d at 663), whereas a GED Reasoning Level of 2 means that the individual has the ability to carry out "detailed but uninvolved written or oral instructions." *Id.* Citing the ALJ's finding at step five that Plaintiff could perform certain occupations which have a GED Reasoning Level higher than Level 1, Plaintiff argues that had the ALJ included Dr. Bruno's limitation of two-step tasks, "none of the occupations relied upon by the ALJ at step five would have been available. *Id.* at 16.

The Court agrees that the ALJ's mischaracterization of the evidence and related lack of clarity in the ALJ's opinion analysis require remand. Specifically, the ALJ mischaracterized the state agency opinions when stating that these reviewing consultants "did not assign related limitations" to the paragraph B criteria. R. 33. Inexplicably, despite this assertion, the ALJ then identified in the next two sentences specific limitations in both opinions related to the broad areas of functioning under paragraph B. The ALJ noted that the initial state agency review limited Plaintiff to "basic tasks in low stress or low contact work-like settings" and that on reconsideration, Plaintiff was found "able to follow simple instructions, and directions, two step tasks, and simple repetitive tasks[.]" *Id.*[9]

---

[9] The ALJ also mischaracterized the opinion evidence when she stated that "these [state agency opinions] found moderate limitations in all of the paragraph B criteria[.]" R. 33. As detailed above, while Dr. Bruno, on reconsideration, found all moderate limitations, Dr. Fierstien, upon

Notably, nowhere in the ALJ's analysis does she address the supportability or consistency of the state agency opinions, including Dr. Bruno's opinion that Plaintiff was limited to, *inter alia*, "two step tasks[.]" *Id*. While it is true that the ALJ need not use the "magic words" of supportability and consistency for each opinion and may "weave supportability and consistency throughout her analysis[,]" *Zaborowski*, 115 4th at 639, the Court is unable to glean from the ALJ's discussion how she considered those factors when finding that, *inter alia*, Dr. Bruno's opinion had "little persuasive value[.]" R. 30–34. Without the ALJ's articulation (explicitly or otherwise) of the supportability and consistency of the state agency evidence, the ALJ's finding that those opinions had "little persuasive value" seems to be based on a mischaracterization of the evidence. *Id*.; *cf. Lawrence v. Kijakazi*, No. 22-CV-4995, 2023 WL 7129950, at *9 (E.D. Pa. Oct. 30, 2023) ("But [the ALJ] did not identify any alleged inconsistencies. . . . [T]he ALJ's decision 'puts the cart before the horse' by improperly treating Plaintiff's 'above-defined RFC' as a settled fact rather than something that was being shaped by the ALJ's consideration of each piece of evidence, including Dr. Dankmyer's opinion.").

The ALJ may not simply reject evidence for the wrong reason or for no reason. *See Sutherland v. Comm'r Soc. Sec*., 785 F. App'x 921, 928 (3d Cir. 2019) ("[T]he ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'") (quoting *Morales*, 225 F.3d at 317); *cf. Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Thus,

---

initial review, found Plaintiff moderately limited in the ability to concentrate, persist, or maintain pace, but found she was only mildly limited in the abilities to understand, remember, or apply information; interact with others; or adapt or manage herself. R. 86, 95, 104, 113.

18

when an ALJ's decision relies on a mischaracterization of the evidence, the decision is not supported by substantial evidence. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis.").

The Commissioner nevertheless insists that the ALJ, when considering the state agency opinions, stated that the RFC contained "additional work-related restrictions" that sufficiently addressed Plaintiff's limitations consistent with the record evidence. *D.'s Br.* at 11–12 (internal quotation marks omitted); *see also* R. 33 (including "additional work-related restrictions, such as brief and routine contact with the public and interaction with coworkers and supervisors on routine matters based upon a plain reading of the medical evidence of record and full consideration of the claimant's testimony regarding her interaction with others"). The Commissioner argues that not only did the ALJ explicitly mention Dr. Bruno's "two step task" opinion and therefore considered it, but there is substantial evidence that supports the ALJ's conclusion that there was not "a need for additional work-related limitations" (beyond the social limitations added by the ALJ). *Id.* at 12–14 (internal quotation marks omitted). The Commissioner further contends that a two-step task limitation does not preclude the three jobs identified by the ALJ. *Id.* at 14 (citing *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004)).

The Commissioner's argument fails to persuade this Court that the ALJ did not err or that any such error was harmless. As detailed above, the ALJ did not discuss the regulatory factors of supportability and consistency and it is not apparent from the ALJ's discussion why she rejected,

19

*inter alia*, Dr. Bruno's two-step task limitation. Moreover, the ALJ based her finding that the state agency opinions had "little persuasive value" based upon a mischaracterization of the evidence. Given this record, the Court is unable to follow the ALJ's reasoning. *See Glenda M. v. Comm'r Soc. Sec.*, Civ. No. 22-03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Court further disagrees with the Commissioner's position that the ALJ's failure to properly consider Dr. Bruno's opinion is harmless. As previously noted, while the RFC contains a limitation for, among other things, "carry[ing] out simple instructions and perform[ing] simple tasks[,]" it does not contain Dr. Bruno's limitation for two-step tasks, which, if adopted, may show that Plaintiff is unable to perform jobs that exist in significant numbers in the national economy. R. 29. "[W]hile formally unsettled in the Third Circuit," many courts have concluded that "'simple, repetitive tasks' are legally distinct from 'one- and two-step tasks.'" *Cruz v. Bisignano*, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025); *see also id.* at *7–8 (collecting cases); *Stine v. Kijakazi*, No. CV 21-5492, 2023 WL 3483885, at *9 (E.D. Pa. May 15, 2023) ("While Defendant is correct in asserting that the distinction between an RFC for simple, routine tasks (as found by the ALJ here) and one for one -to- two-step tasks is unsettled in the Third Circuit, . . . the majority of courts have found the distinction to be meaningful.") (collecting cases). Notably, the Commissioner in this case implicitly acknowledges that there is a

distinction between "simple tasks" and "two step tasks" when arguing that substantial evidence supports the ALJ's rejection of Dr. Bruno's opined limitation. *D.'s Br.* at 12–14.

This distinction takes on greater significance when considering Plaintiff's ability to perform the three jobs identified at step five of the ALJ's decision. R. 34–35. By way of background, the Dictionary of Occupational Titles ("DOT") is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). "The qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (quoting Appendix C, DOT).

As relevant in this case, "GED measures 'those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Id*. "GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. . . . Reasoning levels in the DOT range from level 1 to level 6." *Id*. (citing Appendix C, DOT). GED reasoning level 1 applies "commonsense understanding to carry out simple one- or two-step instructions" in "standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry out detailed but uninvolved written or oral instructions" in "problems involving a few concrete variables in or from standardized situations." *Id*. Reasoning level 3 applies "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" in "problems involving several concrete variables in or from standardized situations." *Id*.

Courts in this circuit have found that "[t]he plain language of the DOT definition for GED Reasoning Level 1 suggests there is no conflict between it and a limitation to no more than 1 or 2-step tasks." *Shipman v. Kizakazi*, No. 3:22-CV-00636, 2023 WL 5599607, at *10 (M.D. Pa. Aug. 29, 2023) (citation omitted). "Courts have also noted that a GED Reasoning Level of 2 *may* conflict with a limitation to 1 or 2-step tasks, and typically remand where there is a conflict involving a limitation to 1 or 2-step tasks and the only occupations cited by a VE [vocational expert] and ALJ contain a GED reasoning level 2." *Id*. (citation omitted) (emphasis in the original).

In this case, the vocational expert testimony and the GED reasoning levels of the jobs identified at step five may conflict with Dr. Bruno's opined limitation for two-step tasks. The hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 29, 74. The vocational expert responded that the jobs of package sorter (222.687-022), mail room clerk (209.687-026), and electrical assembler (729.687-010) would be appropriate for such an individual. R. 75. At step five of the sequential evaluation, the ALJ, relying on vocational expert testimony, found that Plaintiff was able to perform these three jobs. R. 35–36. However, two of these jobs—package sorter and electrical assembler—are reasoning level 2 jobs, and the third job—mail room clerk— is reasoning level 3. *See* Routing Clerk, DICOT 222.687-022 (reflecting reasoning level 2);[10] Electrical Assembler, DICOT 729.687-010 (same); Mail Clerk, DICOT 209.687-026 (reflecting reasoning level 3).

---

[10] The DOT identifies this job as "Routing Clerk," but acknowledges other names for this position.

Based on the facts of this particular case, the Court cannot say that the ALJ's failure to include (or the failure to explain the omission of) Dr. Bruno's two-step tasks limitation was harmless where such limitation may conflict with the vocational expert testimony and Plaintiff's ability to perform the step five jobs that require reasoning levels 2 or 3. In *Shipman*, 2023 WL 5599607, at *10, the court stated: "Because the jobs identified by the vocational expert all have a GED Reasoning Level of 2, 3, and 4, the Court finds that remand is required to properly consider Shipman's limitation to one-and two-step tasks. If the ALJ had included a limitation to one or two-step tasks and relied on the same vocational expert testimony already in this record, the result of the ALJ's decision, would not be the same." (citations omitted). *See also Maher v. Saul*, No. 19-CV-05721-JDW, 2020 WL 5876808, at *5–7 (E.D. Pa. Sept. 9, 2020), *report and recommendation adopted*, No. 5:19-CV-05721-JDW, 2020 WL 5849466 (E.D. Pa. Oct. 1, 2020) (finding that a restriction to one- and two-step tasks "may conflict with the ALJ findings and the VE testimony[,]" and directing that "the ALJ was obligated to explain whether he accepted or rejected this narrower limitation (to one-and two-step tasks)[,]" "[b]ecause this restriction (if credited) may have impacted the VE's testimony, and [thus,]the ALJ's error was not harmless"); *Harden v. Comm'r of Soc. Sec.*, No. CIV.A. 13-906, 2014 WL 4792294, at *5 (W.D. Pa. Sept. 24, 2014) ("Although this Court is expressly not making any finding as to whether positions with a GED reasoning level of 2 can or cannot be performed by claimants limited to one or two-step tasks, it does find the issue of whether Plaintiff is so limited to be relevant to the VE's opinion and the ALJ's findings. Simply put, since this limitation may have impacted the VE's reasoning, he must consider it (if Plaintiff is, in fact, subject to such a restriction).").[11]

---

[11] In this respect, Plaintiff's reliance on *Money*, which found that "[w]orking at reasoning level 2 would not contradict the mandate that [the claimant's] work be simple, routine and repetitive[,]" 91 F. App'x at 215, is misplaced as that case is inapposite.

In summary, without further explanation, the Court simply cannot conclude from this record that substantial evidence supports the ALJ's finding that Dr. Bruno's opinion had "little persuasive value." Therefore, the Court cannot find that the RFC determination at step four and the job findings at step five are supported by substantial evidence. *See id.*; *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review") (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025) ("[A]s part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings."); *Shipman*, 2023 WL 5599607, at *10.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[12]

## V.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 26, 2026                                     *s/Cheryl L. Pollak*
                                                        CHERYL L. POLLAK
                                                        UNITED STATES MAGISTRATE JUDGE

---

[12] Plaintiff raises a challenge to the work limitations in the RFC. Because the Court concludes that the matter must be remanded for further consideration of Dr. Bruno's opinion, the RFC determination, and step five findings, the Court does not consider Plaintiff's challenge.